**Slobodan KARIC, et al., Plaintiffs,**

v.

**The MAJOR AUTOMOTIVE COMPANIES, INC., et al., Defendants.**

**No. 09 CV 5708(ENV).**

United States District Court, E.D. New York.

July 20, 2011.

Brian Scott Schaffer, Eric Joshua Gitig, Joseph A. Fitapelli, Fitapelli & Schaffer LLP, New York, NY, for Plaintiffs.

Garry T. Stevens, Jr., Lee Squitieri, Squitieri & Fearon, LLP, Christopher E. Chang, Law Offices of Christopher E. Chang, New York, NY, for Defendants.

### *ORDER*

CHERYL L. POLLAK, United States Magistrate Judge.

On December 30, 2009, plaintiffs Slobodan Karic, Claribel Garcia, Steven Jones, Goran Stanic, Ljubomir Zivanovic, Daniel Colon, and William Chatman (collectively, "plaintiffs") commenced this action against The Major Automotive Companies, Inc.[1] ("Major World") and three individual defendants, Bruce Bendell, Harold Bendell, and Christopher Orsaris (collectively with Major World, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and the New York Labor Law ("NYLL"), based on defendants' failure to pay plaintiffs and similarly situated sales representatives proper minimum wages. (Am. Compl.[2] ¶¶ 1, 22–23). Currently before this Court is plaintiffs' motion for conditional certification pursuant to Section 216(b) of the FLSA, approval of the proposed FLSA Notice to be sent to all potential opt-ins, and expedited discovery of the names and contact information for the potential opt-ins.

### *FACTUAL BACKGROUND*

During the Class Period, which runs from December 30, 2006 to the date of filing of this action, December 30, 2009 (the "Class Period"), plaintiffs were employed as sales representatives at various Major World car dealerships. (*Id.* ¶ 22; Pls.' Mem.[3] at 2 (citing Compl.[4])). According to the Complaint, Major World consists of nine closely affiliated, jointly operated, managed, and controlled new and

---

1. Defendants include the Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc., d/b/a Major Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors of Long Island City, Inc., d/b/a Major Kia, Major Motors of the Five Towns, Inc., and Major Automotive Realty Corp. (collectively, "Major World").

2. Citations to "Am. Compl." refer to plaintiffs' Amended Complaint, filed on February 3, 2011.

3. Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act for Court-Authorized Notice to Similarly Situated Persons and for Expedited Discovery, filed on October 22, 2010.

4. Citations to "Compl." refer to plaintiffs' initial Complaint, filed on December 30, 2009.

used car dealerships operating in the New York City metropolitan area. (Compl. ¶ 3; *see supra* at 221 n. 1). Plaintiffs allege that during the Class Period, each of the individual defendants, Harold and Bruce Bendell and Christopher Orsaris, were responsible for setting the employment and compensation policies affecting Major World's sales representatives. (Am. Compl. ¶ 11; Pls.' Mem. at 2).

In addition to the named plaintiffs, plaintiffs allege that there were at least 150 other sales representatives working for Major World during the Class Period. (Am. Compl. ¶ 5). Nine of these other sales representatives[5] have already joined the action as opt-in plaintiffs. Plaintiffs allege that all sales representatives at all Major World dealerships performed the same job duties, were subject to the same working conditions and rules, and were all paid according to the same commission structure. (*Id.* ¶¶ 23, 145; Pls.' Mem. at 10). Plaintiffs allege that during the Class Period, they sold new and used cars at Major World, receiving a flat rate of pay of $20.00 per day, plus commissions based on the cars that they sold, regardless of the number of hours worked. (Am. Compl. ¶¶ 8–9). Plaintiffs allege that they worked approximately six days per week, twelve hours per day. (Pls.' Mem. at 3). Plaintiffs allege that they were not paid an hourly wage, but instead were paid a shift pay plus commissions on cars sold. (Am. Compl. ¶ 8). Plaintiffs contend that while wages from commissions may be included when calculating minimum wage under the FLSA, the employee must still be paid the statutory minimum for all hours worked in a pay period. (Pls.' Mem. at 4 (citing *Chao v. Vidtape, Inc.*, 66 Fed.Appx. 261, 264 (2d Cir.2003))).

Plaintiffs claim that if they did not sell any cars during a pay period, they were only paid the $20 per day shift amount. (Am. Compl. ¶ 8; Pls.' Mem. at 4). Thus, for each pay period that plaintiffs did not sell any cars, they received substantially less than the applicable minimum wage. (Pls.' Mem. at 4). Plaintiffs further allege that even when they sold one or two cars, the commissions received were not enough to constitute minimum wage when added to the shift pay. (*Id.* at 4–5). Furthermore, plaintiffs allege that they were never "informed by [d]efendants of their entitlement to minimum wage for all hours worked under the FLSA." (*Id.* at 3).

Plaintiffs assert that "Major World designed and implemented an ongoing scheme whereby it manipulated the gross profits of cars sold, underreported income, self-dealt, and falsified documents and sales records, thereby reducing its sales representatives' commissions and increasing its own profits." (Am. Compl. ¶ 10). Defendants would also allegedly charge the sales representatives for any "lateness, failure to properly fill out forms, and other arbitrary and purported infractions." (*Id.* ¶ 18). As a result, plaintiffs claim that they sustained "direct and proximate financial harm to their income," and seek a declaratory judgment, "[u]npaid minimum wages, overtime pay, spread-of-hours pay, agreed upon wages, unpaid commissions and unlawful deductions of wages, along with liquidated damages and interest," as well as "pre-judgment interest and post-judgment interest," "an injunction requiring [d]efendants to pay all statutorily required wages pursuant to the NYLL," and all other remedies "this Court shall deem just and proper." (*Id.* ¶¶ C, E–G, I).

---

5. These include Bernardo Collado, Jack Wes Dowers, Warren Morgan, Michael Alade–Smith, Luis M. Felix, Felix A. Pena, Francisco E. Quinones, Hristos A. Papagiannopoulos, and Jaime C. Rios.

## DISCUSSION

### A. Standard for Class Certification Under FLSA 216(b)

██ Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); *see also Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 648–49 (2d Cir.1995) (citations omitted). Pursuant to Section 216(b) of the FLSA, an employee may bring an action " 'to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions.' " *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 103 (S.D.N.Y.2003) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y.1997)).

██ Under the statute, an employee may bring a collective action "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). However, unlike a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, a collective action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt in" by giving consent in writing to become a party to the action. *Id.*; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d at 103–04; *see also Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y.2007); *Patton v. Thomson Corp.*, 364 F.Supp.2d 263, 266 (E.D.N.Y.2005).

██ Courts use a two-step analysis to determine whether certification of a collective action under the FLSA is appropriate. *See Castro v. Spice Place, Inc.*, No. 07 CV 4657, 2009 WL 229952, at *2 (S.D.N.Y. Jan. 30, 2009). The first step involves "looking to the pleadings and affidavits to determine whether plaintiffs have satisfied 'the minimal burden of showing that the similarly situated requirement is met.' " *Id.* (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.2006)). To meet this burden, "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Doucoure v. Matlyn Food, Inc.*, 554 F.Supp.2d 369, 372 (E.D.N.Y.2008) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. at 261). The standard for approval under Section 216(b) is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23. *Avila v. Northport Car Wash, Inc.*, 774 F.Supp.2d 450, 454–55 (E.D.N.Y. 2011) (quoting *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y.2001)). "Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class.' " *Laroque v. Domino's Pizza, LLC*, 557 F.Supp.2d 346, 351 (E.D.N.Y.2008) (quoting *Guzman v. VLM, Inc.*, No. 07 CV 1126, 2007 WL 2994278 at *3 (E.D.N.Y. Oct. 11, 2007)).

"The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are 'actually similarly situated.' " *Avila v. Northport Car Wash, Inc.*, 774 F.Supp.2d at 454 (quoting *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y.2009)). "At that juncture,

the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. at 212.

If plaintiffs meet the "fairly lenient standard" required by the first step in the analysis, the court will typically grant "conditional certification" and authorize notice to potential plaintiffs. *See Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. at 367. Although the statute has no specific provision for issuing such notice, the Supreme Court in *Hoffmann–La Roche Inc. v. Sperling* held that it was appropriate for courts to authorize such notice under the FLSA in order to serve the "broad remedial goal" of the Act. 493 U.S. 165, 171–173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 335–36 (2d Cir.1978) (holding that a district court "has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the [FLSA]"); *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. at 261 & n. 15. The burden is significantly less than that required to sustain a class certification motion under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for potential plaintiffs to join the action and is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated. *See Patton v. Thomson Corp.*, 364 F.Supp.2d at 267; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d at 104. After discovery, the court then looks at the record again to " 'make[ ] a factual finding regarding the similarly situated requirement; if

the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified.' " *Castro v. Spice Place, Inc.*, 2009 WL 229952, at *2 (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. at 197).

### B. *Analysis*

Plaintiffs move for conditional certification, arguing that they have met their minimal burden of demonstrating that they were "similarly situated." (Pls.' Mem. at 1–2). In support of their motion, plaintiffs have submitted the declarations of eight of the named plaintiffs and opt-ins, Karic, Garcia, Jones, Stanic, Zivanovic, Colon, Dowers, and Morgan, each declaring that they worked for Major World during the Class Period, that they were paid a flat rate of $20.00 per shift plus commissions, and that all sales representatives were similarly paid for similar hours.[6] (*Id.* at 2). Each individual claims that during periods when they made no sales, they did not earn the applicable minimum wage for the hours worked. (*Id.*)

In their initial response to plaintiffs' motion for conditional certification, filed in November of 2010, defendants acknowledge that the controlling case law provides "a presumption in favor of conditional certification" and thus, defendants did not vigorously oppose the conditional certification based on an argument that there was no violation of the FLSA. (Defs.' Mem.[7] at 1). However, defendants deny that plaintiffs were not paid the minimum wage and state that, following discovery, they intend to prove that with commissions, plaintiffs

---

**6.** (*See* Karic Decl. ¶¶ 4–6; Garcia Decl. ¶¶ 4–6; Jones Decl. ¶¶ 4–6; Stanic Decl. ¶¶ 4–6; Zivanovic Decl. ¶¶ 4–6; Colon Decl. ¶¶ 4–6; Dowers Decl. ¶¶ 4–6; and Morgan Decl. ¶¶ 4–6). All of the aforementioned declarations were submitted as exhibits to the Complaint.

**7.** Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification, filed on November 24, 2010.

"were paid well above the minimum wage." (*Id.* at 2).

On April 21, 2011, defendants submitted a Supplemental Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification, in which they argued that since the time of their initial response, plaintiffs have examined approximately 20 boxes of documents produced by the defendants and that the case "is therefore substantially advanced." (Defs.' Supp. Mem.[8] at 1). Given the "extensive discovery" provided, defendants now contend that the motion for certification should not be evaluated based on the lenient conditional certification standard, but instead should be evaluated under an intermediate or heightened standard used by some courts after discovery has occurred. (*Id.* at 1–3). When considered under this intermediate standard, defendants contend that the motion for certification should be denied based on plaintiffs' failure to provide any actual evidence of a nexus between plaintiffs' circumstances and that of other individuals claimed to be similarly situated. (*Id.* at 4–5).

While defendants cite several cases in support of their argument that the two-step approach should be collapsed in this case and that the " 'lenient' standard" should be rejected in favor of a "more flexible one" (*id.* at 3), the majority of the cases cited are from other circuits and are distinguishable on their facts. *See, e.g., Bouaphakeo v. Tyson Foods, Inc.,* 564 F.Supp.2d 870 (N.D.Iowa 2008) (where the parties had "completed class discovery," the court applied an intermediate approach under which the court considered not only plaintiffs' complaint and submissions, but all of the facts placed before the court); *Bunyan v. Spectrum Brands, Inc.,* No. 07 CV 0089, 2008 WL 2959932, at *2, *4

(S.D.Ill. July 31, 2008) (explaining that the first step of the certification process occurs "where the parties have engaged only in minimal discovery;" the court decided to apply an intermediate approach where the parties had conducted "a substantial amount of discovery" over eleven months and defendants had submitted information specifically challenging whether the plaintiffs were similarly situated in terms of job responsibilities); *Villanueva–Bazaldua v. TruGreen Ltd. Partners,* 479 F.Supp.2d 411, 415 (D.Del.2007) (adopting an intermediate approach where some discovery had occurred and finding that the sole plaintiff's one page declaration was insufficient to provide a factual showing to support conditional class certification); *Torres v. Gristede's Operating Corp.,* No 04 CV 3316, 2006 WL 2819730, at *7 n. 7 (S.D.N.Y. Sept. 29, 2006) (noting that the traditional two-stage process did not apply because plaintiffs moved for certification only after discovery had been completed).

 Here, while the parties have been engaged in discovery for several months, plaintiffs note, correctly, that discovery is far from complete; there have been numerous conferences, one as recently as June 29, 2011, held to address discovery deficiencies and defendants' failure to provide certain requested records relating to the files of the named plaintiffs. (Pls.' 5/2/11 Letter at 1). Plaintiffs continue to complain that they have not been provided with the basic discovery needed to establish their claims and the Court has repeatedly Ordered defendants to undertake certain steps to obtain the information requested. Moreover, in contrast to the cases cited above, the plaintiffs have submitted affidavits from eight plaintiffs and opt-ins, each of which describes a common

---

**8.** Citations to "Defs.' Supp. Mem." refer to defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification, filed on April 21, 2011.

pattern of compensation, similar job responsibilities, and a failure to comply with the FLSA. Finally, in contrast to many of the other cases, defendants here have not submitted any affidavits or other factual evidence to contradict the plaintiffs' assertions. Accordingly, at this preliminary stage of discovery, the Court finds no basis for deviating from accepted authority to require plaintiffs to make more than the minimal showing that they are similarly situated to the potential class members.

Next, defendants argue that because none of the current individual plaintiffs were employed by three of the entities— Major Automotive Companies, Inc., Major Motors of the Five Towns, Inc., or Major Automotive Realty Corp.—it would be improper to include employees of these defendants in the putative class. (Defs.' Supp. Mem. at 4). Specifically, defendants claim that "none of these entities can be liable for wages or overtime to any plaintiff and none of the [p]laintiffs can be the representative of a putative class of employees of those defendant companies." (*Id.*) Thus, employees of these defendants are allegedly not similarly situated. (*Id.* at 4–5). In response, plaintiffs rely on the decision in *Capsolas v. Pasta Resources, Inc.*, to argue that they have sustained their "modest factual showing" that the employees of all of the Major World entities were subjected to the same common compensation policy, even though there are currently no employees of these three entities named as plaintiffs or opt-ins. (Pls.' Notice of Supp. Auth.[9] at 2 (quoting No. 10 CV 5595, 2011 WL 1770827, at *2, *4 (S.D.N.Y. May 9, 2011))).

In *Capsolas v. Pasta Resources, Inc.*, the plaintiffs, who were employed by various restaurants commonly owned by the two individually named defendants, held various positions, "such as backwaiter, server, and bartender." 2011 WL 1770827, at *1. The plaintiffs alleged that at the end of each evening, tips would be divided according to a formula, along with a deduction of a percentage for the night's wine sales, which allegedly went to the house. *Id.* In support of their motion for conditional certification, the plaintiffs in *Capsolas* submitted statements from various employees who indicated that at each of the restaurants where they worked, there was a 4–4.5% deduction from tips for wine sales. *Id.* at *1–2. Defendants in *Capsolas* argued that plaintiffs had failed to adequately show a common policy with respect to the remaining three restaurants, for which no plaintiff had submitted a statement. *Id.* at *3. However, based on the plaintiffs' statements, the court found that plaintiffs had established sufficient facts to reasonably infer that there was a uniform policy across all of the restaurants that were commonly owned and supervised by the same individuals. *Id.*; *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, 678 F.Supp.2d 89 (E.D.N.Y.2010) (certifying a class of workers at three restaurants even though the plaintiffs all worked for the same restaurant); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y.2007) (certifying a class of restaurant workers based on a statement that a uniform policy existed even though plaintiffs only worked at some of the restaurants); *but cf., Rudd v. T.L. Cannon Corp.*, No. 10 CV 591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) (denying certification of workers across a chain where the allegations were of isolated, particularized incidents, with no claim of an overall policy).

9. Citations to "Pls.' Notice of Supp. Auth." refer to plaintiffs' Notice of Supplemental Authority in Further Support of their Motion for Collective Action Certification, filed on May 16,2011.

■ Having considered the defendants' arguments, the Court agrees with the reasoning in *Capsolas,* and finds that plaintiffs have provided sufficient factual information to satisfy the lenient standard required for certification of the class, even as to those Major World entities for which no specific affidavit has been provided. Plaintiffs have submitted declarations from eight individuals describing the same practice as to tips, and the Complaint specifically alleges that all the Major World entities are commonly owned and operated by the same individuals who set a common policy for each of the entities. (Compl. ¶¶ 1, 3; Pls.' Mem. at 2–3). Although defendants argue that there is no explicit allegation of a common policy in any of the plaintiffs' individual declarations, each of the eight plaintiffs who worked at various Major World locations articulated a common practice of the dealerships to pay $20.00 per day plus commissions, leaving a sufficient basis from which to infer the same pattern of behavior as to all Major World entities. Each declaration also alleges a failure to comply with the FLSA. The Court finds that these allegations, coupled with plaintiffs' claim that there is common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared, is sufficient. (*See* Pls.' Notice of Supp. Auth. at 2).

Finally, defendants cite to the decisions in *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d 628, 633 (S.D.N.Y.2007), *Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d 346, and *Morales v. Plantworks, Inc.,* 05 CV 2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006), to argue that because the affidavits here are "cookie cutter" affidavits, with simple boilerplate and identical statements, the affidavits should be rejected as insufficient. (Defs.' Supp. Mem. at 5–6). Although the court in *Morales* denied class certification because the affidavits made no reference to any employees other than the plaintiffs and made no allegation of a common plan or policy, the court in *Laroque* certified the class based on the affidavits of the four named plaintiffs. *Morales v. Plantworks, Inc.,* 2006 WL 278154 at *2; *Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d at 353, 356. Similarly, in *Cuzco,* the court concluded that there was sufficient basis to certify the class when plaintiff's singular declaration and complaint were viewed in conjunction with declarations submitted by the defendant. *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d at 633–34. None of these cases present circumstances similar to the case at bar, where plaintiffs have not only submitted a Complaint, but have supported the allegations therein with numerous declarations describing a common practice, alleging common ownership, and alleging the existence of other potential class members.

Having reviewed the declarations provided by plaintiffs, the Court concludes that plaintiffs have satisfied their burden of setting forth specific facts demonstrating that they are sufficiently similarly situated to other sales representatives of the various Major World entities to warrant conditional certification of the Class and for Notice to be sent to all putative class members, at each of the Major World dealerships.

## C. Notice

■ In connection with their motion for certification, plaintiffs have submitted a Proposed Class Notice for approval by the Court. Plaintiffs also supplied an updated Proposed Notice with their Reply in Support of their motion.

In their Supplemental Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification, defendants raise an ob-

jection to the Notice insofar as it groups together all Major World dealerships, given defendants' argument that there is no class representative named for three of the entities. (Defs.' Supp. Mem. at 7). Defendants contend that each dealership should be listed separately and that the Notice should only refer to those dealerships that employed an existing class representative. (*Id.*) The Court has denied defendants' request to exclude the three dealerships from the collective action based on the absence, at this time, of a class representative from those entities. However, the Court agrees with defendants that each Major World entity should be listed individually, to make it clear to prospective opt-ins which dealerships are covered by this case. Therefore, the first line on the first page of the Notice should read as follows: "Please read this notice if you have been employed by any of the following MAJOR WORLD dealerships: Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc., d/b/a Major Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors of Long Island City, Inc., d/b/a Major Kia, Major Motors of the Five Towns, Inc., or Major Automotive Realty Corp., since December 30, 2006."

In addition, defendants object to the language in the Proposed Class Notice that states that if recipients of the Notice "do not opt in, they will not be included as part of this lawsuit." (Defs.' Mem. at 2 (citing Fitapelli Decl., Ex. L [10] at 2)). Defendants point out that while this statement may be correct insofar as it addresses the FLSA claims for which there must be an affirmative opt-in, this statement is incorrect in that a class may later be certified under traditional state statutory or common law authorities that would not require an employee to opt in order to participate. (*Id.*) In response, plaintiffs proposed the following changes to the Notice with which the Court agrees. The section on page two entitled "DO NOTHING" [11] should therefore read as follows:

> By doing nothing, you will not be included in this lawsuit for the purpose of asserting a minimum wage claim. This means that you give up the possibility of getting money or benefits that may come from a trial or settlement of the minimum wage claims asserted in this lawsuit, if those bringing the lawsuit are successful. The limitations period on you claims continues to run.

The Court also notes a few other changes that must be made:

1) In paragraph 1, Sales Representatives should be singular, not plural.

2) Paragraph 6 should be modified to include the following sentence at the end of the paragraph: "If any of the defendants or their agents try to discuss the lawsuit with you, you have the right to not discuss it with them."

3) Paragraph 7 should begin with the following: "It is entirely your own decision whether or not to join this lawsuit. This Notice does not mean that you have a valid claim or that you are entitled to any monetary recovery. Any such determination must still be made by the Court." There should then be a line skipped before the

---

**10.** Citations to "Fitapelli Decl., Ex. L" refer to the plaintiffs' Proposed Class Notice, submitted as Exhibit L to the Declaration of Joseph Fitapelli in Support of Plaintiffs' Motion for Conditional Class Certification and Court–Authorized Notice Pursuant to FLSA, 29 U.S.C. § 216(b).

**11.** The Court notes that plaintiffs did modify this section in their second Proposed Notice, pursuant to defendants' initial objections; however, the language should be modified further, as indicated above.

sentence beginning "Enclosed is a form ..."

4) Paragraph 8 should be modified to inform the potential class members that they have the option of hiring their own counsel; they are not required to agree to the representation of Fitapelli & Schaffer, LLP. Section 8 should be replaced with the following:

> The Plaintiffs in this lawsuit are currently represented by Fitappelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, N.Y. 10016, www.fslawfirm.com.
>
> If you wish, you may choose to be represented by Plaintiffs' counsel in this case. You will not be required to pay any fee for services provided by Fitappelli & Schaffer, LLP.
>
> However, you also have the right to consult with an attorney of your own choosing about this matter, and if you wish to be represented by counsel other than Plaintiffs' counsel, you may retain another attorney. You will be responsible for paying that attorney and that attorney must notify the Court of their representation.

This information must also be present on the Consent Form; plaintiffs must add to the Form a way for opt-in plaintiffs to indicate whether they wish to opt in, and if so, whether they wish to be represented by Fitappeli & Schaffer, LLP, or whether they wish to retain their own attorney. The Consent Form itself should also include the date by which the forms must be returned. The same language that is on page four of the Notice may be used for that purpose.

Accordingly, plaintiffs are directed to modify the Proposed Class Notice as directed herein and to submit the updated Notice for Court approval on or before **August 26, 2011.**

### D. *Discovery of Sales Representatives' Contact Information*

To the extent that information regarding the names and contact information of all new and used sales representatives have not been provided by defendants, such information shall be provided to plaintiffs on or before **August 26, 2011.** This information shall include the "name, last known mailing address, last known telephone number, work location, and dates of employment" necessary to identify potential opt-in plaintiffs. *Thompson v. World Alliance Fin. Corp.*, No. 08 CV 4951, 2010 WL 3394188, at *8 (E.D.N.Y. Aug. 20, 2010) (citations omitted).

### *CONCLUSION*

Having considered the parties' submissions, the Court hereby grants plaintiffs' request for class certification. The Court Orders that plaintiffs provide the Court with an updated Notice, pursuant to the aforementioned instructions, on or before **August 26, 2011.** Defendants are to provide plaintiffs with the proper contact information for all potential plaintiffs by the same date.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail.

**SO ORDERED.**